IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JESSE R. JONES                                                                            PLAINTIFF

      v.                                         CIVIL NO. 07-4026

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                         DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Jesse R. Jones brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim period of disability and disability insurance benefits (DIB). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

Plaintiff protectively filed a DIB application on May 3, 2004, alleging an inability to work since January 1, 2001, due to a heart attack and a liver abscess.[1] (Tr. 55-57, 79). Plaintiff's insured status expired on December 31, 2001. (Tr. 14). An administrative hearing was held on April 6, 2006. (Tr. 276-295). Plaintiff was present and represented by counsel.

In a written decision dated May 23, 2006, the ALJ concluded that plaintiff's claim for DIB failed at step two of the sequential evaluation established by regulation by the Commissioner, as plaintiff suffered no severe impairment prior to December 31, 2001, the date his insured status expired. (Tr. 17-21).

---

[1] As the ALJ addressed in his hearing decision, plaintiff was not able to apply for Supplement Security Income benefits because plaintiff's non-excludable resources exceeded Title XVI limitations. (Tr. 14).

AO72A
(Rev. 8/82)

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on September 28, 2006. (Tr. 3-7). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. 1). Plaintiff filed an appeal brief on June 28, 2007. (Doc. 6). Defendant filed an appeal brief on July 25, 2007. (Doc. 7).

By Order dated February 8, 2008, this court administratively terminated the case and directed the defendant to supplement the record. (Doc. 9).

By Order dated March 17, 2008, this case was reopened. (Doc. 11). On March 19, 2008, the supplemental transcript was filed. Both parties filed supplemental appeal briefs. (Doc. 12, 14). The case is before the undersigned for report and recommendation.

**II.    Evidence Presented:**

The record reveals plaintiff, with his attorney, appeared and testified at a hearing before the ALJ on April 6, 2006. (Tr. 276-295). Plaintiff was fifty-six years of age when his insured status expired. (Tr. 279). Plaintiff received a high school education and one and one-half years of college education. (Tr. 279). Plaintiff testified his most recent job was that of a private contractor as a vaccinator and de-beaker for a chicken company. (Tr. 280, 288-289). Plaintiff testified his geographic area covered Pittsburgh to Texas. (281). Plaintiff was a working supervisor over a crew that he hired. (Tr. 289). Plaintiff stopped working in early 2001. (Tr. 281).

The relevant time period in this case is January 1, 2001, through December 31, 2001. Plaintiff did not seek medical treatment during this period of time. However, he sought

treatment both prior and subsequent to the relevant time period and this evidence will be discussed below.

On March 9, 1993, plaintiff was admitted into the Mother Frances Hospital after experiencing an acute anterolateral myocardial infarction. (Tr. 122-122). Plaintiff underwent a cardiac cathererization, performed by Dr. Frank Navetta, on March 12, 1993, that revealed single vessel CAD, an IRA equal eighty-five percent proximal LAD lesion with TIMI III flow and an overall normal LV function with residual of anterior wall MI. (Tr. 117-118). Plaintiff underwent a directional coronary artherectomy on March 15, 1993. (Tr. 112-113). Plaintiff was discharged on March 16, 1993, in stable condition. His discharge medications consisted of taking Aspirin once a day, Nitroglycerin as needed for chest pain, Cardizam CD once a day and Atenolol once a day. (Tr. 111)

In progress notes dated April 14, 1993, plaintiff reported he had had no chest pain or peripheral edema and was tolerating his medications. Dr. Navetta stated plaintiff had made a wonderful recovery and was cleared to return to work on a full-time basis beginning the next day. (Tr. 147). Dr. Navetta stated plaintiff had no functional limitations. Dr. Navetta noted plaintiff's reports of shortness of breath and opined that is was related to some anxiety feeling. Dr. Navetta saw no reasons to make any changes to plaintiff's medications.

Plaintiff underwent a Rest/Exercise MUGA Scan on May 27, 1993, that revealed plaintiff had a good exercise capacity, a negative inadequate stress electrocardiogram and a normal resting lower ventricle function with an ejection fraction of sixty-eight percent, and a normal exercise lower ventricle function with an ejection fraction of seventy-five percent. (Tr. 142-143). There

was no evidence of exercise-induced ischemia. Dr. J. Daniel Jackman opined plaintiff had a low likelihood of hemodynamically significant restenosis.

In a letter dated May 27, 1993, Dr. Navetta stated he was very pleased with plaintiff's recovery. (Tr. 140). Dr. Navetta opined plaintiff had returned to a full level of activity without any functional limitations. Plaintiff was to return for a follow-up in four months.

Progress notes dated September 13, 1994, report plaintiff was in for a yearly follow-up. (Tr. 135). Dr. Navetta noted plaintiff had done very well since his last visit. Plaintiff reported no active cardiovascular symptoms despite being quite active. Plaintiff reported having no problems hunting at altitude in Colorado and had no limiting symptoms. Dr. Navetta noted plaintiff was still smoking and advised plaintiff to stop. Plaintiff was to continue taking his current medications.

Plaintiff's arm specimen on March 4, 1997, revealed chronic inflammation consistent with chronic folliculitis. (Tr. 148).

Progress notes dated September 12, 1997, report plaintiff's complaints of a cough, sputum production and some shortness of breath. (Tr. 186). Dr. Michael R. Downs noted plaintiff had some wheezes, a regular heart rate and a negative x-ray. Dr. Downs assessed plaintiff with acute bronchitis with reactive airway disease and tobacco abuse and nicotine addiction. (Tr. 186). Plaintiff was treated with Combivent and a sterapred dosepak. Plaintiff was to return if he did not experience improvement within a short period of time.

Plaintiff returned for treatment of bronchitis symptoms on August 14, 1998. (Tr. 185). Dr. Downs noted plaintiff was a smoker. Plaintiff reported sputum production and a low grade temperature but denied experiencing chills, chest pain, wheezing or shortness of breath. Upon

examination, Dr. Downs noted plaintiff's lungs were basically clear but plaintiff did have an occasional cough. Dr. Downs assessed plaintiff with bronchitis and prescribed Biaxin. Dr. Downs recommended plaintiff stop smoking and gave him Zyban.

Plaintiff underwent a chest x-ray on October 11, 1998, that revealed a somewhat hyperinflated chest consistent with an element of an airway obstructive disease. (Tr. 164). Plaintiff's heart size and pulmonary vessels were within normal limits and his lung fields were clear. The x-ray was radiographically negative for an acute cardiopulmonary process.

Plaintiff was admitted into Baptist Medical Center on November 24, 1998, due to a fever of unknown origin. (Tr. 159, 183-184, 219-225). Plaintiff underwent a CT scan of the abdomen that revealed a mass in plaintiff's liver. (Tr. 159). At the time of admission, plaintiff reported he smoked two packages of cigarettes a day. (Tr. 160). Plaintiff reported he worked in the poultry business running farms and supervising. Plaintiff reported experiencing fever, chills, weakness and fatigue for the past six weeks. Plaintiff denied experiencing shortness of breath, cough, sputum production, gastrointestinal symptoms, chest pain, palpitations or difficulty urinating. No anxiety, depression or thyroid disease was noted. Plaintiff underwent two needle biopsies of the liver that revealed benign inflammatory changes. (Tr. 157, 180-181). No surgery was indicated because plaintiff was responding to intravenous antibiotics. Plaintiff was discharged on December 1, 1998. (Tr. 158, 174). Treatment notes indicate plaintiff was ambulatory, feeling well, eating well and had no fever. (Tr. 158). Plaintiff underwent IV treatment for his liver abscess from December 2, 1998, until December 15, 1998. (Tr. 208).

A CT scan of plaintiff's abdomen performed on January 11, 1999, revealed further diminution and resolution of previously noted intrahepatic mass consistent with a resolving liver

abscess. (Tr. 206). A CT scan performed on February 12, 1999, revealed an almost complete resolution of a previous liver mass. (Tr. 202).

Progress notes dated April 19, 1999, report plaintiff's complaints of pain in his right side. (Tr. 173). After examining plaintiff, Dr. Downs diagnosed plaintiff with myofascial type pain. Plaintiff was instructed to drink more fluids.

Plaintiff underwent a CT scan of the abdomen on May 1, 1999, that was negative with the exception of a small right renal cyst. (Tr. 163). No evidence of an abscess or other liver abnormality was noted.

Progress notes dated May 4, 2000, report plaintiff's complaints of malaise, fatigue and shortness of breath. (Tr. 172). Plaintiff reported he had been unable to perform his job activities or any strenuous activities without feeling very fatigued. Dr. Downs noted plaintiff's EKG did not show any acute changes. Dr. Downs reported that PFT's were abnormal and compatible with restrictive and obstructive disorder. Dr. Downs opined this was related to plaintiff's size and smoking. Dr. Downs assessed plaintiff with chronic obstructive pulmonary disease (COPD). Plaintiff was prescribed Proventil and Atrovent. He was also to take Levaquin for ten days.

Progress notes dated June 1, 2000, report plaintiff returned for a follow-up for bronchitis. (Tr. 171). Plaintiff reported feeling much better and denied chest pain or shortness of breath. Plaintiff reported the Combivent had helped "quite a bit." Dr. Downs assessed plaintiff with chronic obstructive pulmonary disease and improved acute bronchitis. Plaintiff was to continue with Combivent.

Treatment notes dated April 18, 2002, report plaintiff was prescribed a Combivent inhaler for one year. (Tr. 296). Plaintiff was prescribed medication to help with a cyst. The examiner indicated plaintiff needed to follow-up with treatment regarding the cyst.

The remaining medical evidence revealing plaintiff was admitted into Saint Michael Health Care Center on August 23, 2004, for pain in his substernal area. (Tr. 233-267). Plaintiff was discharged August 27, 2004, with a diagnosis of subendocardial myocardial infarction, severe ischemic heart disease, probable sleep apnea, hyperlipidemia, hypertension, paroxysmal atrial fibrillation, history of liver abscess requiring. (Tr. 234). In January of 2005, plaintiff denied chest pain, shortness of breath, PND or orthopnea. (Tr. 267).

### III. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the

ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520(a)- (f). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

AO72A
(Rev. 8/82)

**IV.   Discussion:**

   **A.   Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2001. Accordingly, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of January 1, 2001, his alleged onset date of disability, through December 31, 2001, the last date he was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

   **B. Severe Impairment Analysis:**

The sequential evaluation process may only be terminated at step two when the impairment or combination of impairments would have no more than a minimal effect on plaintiff's ability to work. *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir.1996)*, citing Henderson v. Sullivan,* 930 F.2d 19, 21 (8th Cir.1991)

The procedure of terminating the process at step two has been upheld by the United States Supreme Court in *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119

(1987). In *Brown v. Bowen,* 827 F.2d 311 (8th Cir.1987), the United States Court of Appeals for the Eighth Circuit discussed the impact of *Yuckert* and noted:

> On June 8, 1987, the Supreme Court held that the second step of the sequential evaluation process was not per se invalid. See *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In regard to the application of that standard, however, a majority of the Court adopted a standard which provides that '[o]nly those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits without undertaking' the subsequent steps of the sequential evaluation process. *Id.* 482 U.S. at 158, 107 S.Ct. at 2299.

*Brown v. Bowen,* 827 F.2d at 312.

Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by medical record. *Johnston v. Apfel,* 210 F.3d 870, 875 (8th Cir.2000); see also *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir.2000) (plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation). Thus, plaintiff did have the burden of showing a severe impairment that significantly limited his physical or mental ability to perform basic work activities, but the burden of a plaintiff at this stage of the analysis is not great. *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir.2001).

Further, to establish entitlement to benefits, plaintiff must show that he had been unable to engage in any substantial gainful activity by reason of a medically determinable impairment which had lasted or could have been expected to last for not less than twelve months. See 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

After reviewing the entire record, we find substantial evidence to support the ALJ's determination that plaintiff did not have a severe impairment prior to December 31, 2001. The pertinent medical evidence shows plaintiff did have a heart attack in March of 1993; however, by

-10-

May 27, 1993, Dr. Navetta had cleared plaintiff to return to a full level of activities without any functional limitations. In September of 1994, plaintiff reported he had no problems with hunting at altitude in Colorado. Plaintiff did not seek treatment for his heart again until August of 2004, which was well past the expiration of plaintiff's insured status.

With regard to plaintiff's liver abscess, the medical records show plaintiff was treated for a liver abscess in November of 1998. A CT scan performed in February of 1999, revealed an almost complete resolution of the previous liver mass. By May 1, 1999, there was no evidence of a liver abscess or other liver abnormality.

With regard to plaintiff's respiratory problems, the medical evidence reveals plaintiff was treated for bronchitis in September of 1997. Plaintiff was prescribed medication and instructed to return if he did not experience improvement within a short period of time. Plaintiff did not seek treatment for a respiratory problem again until August of 1998. At that time, plaintiff denied shortness of breath and his lungs were noted to be basically clear but an occasional cough was noted. Plaintiff was treated with medication. In November of 1998, plaintiff denied experiencing shortness of breath. The medical evidence reveals plaintiff did not report respiratory problems again until May of 2000, when he reported experiencing malaise, fatigue and shortness of breath. Plaintiff was diagnosed with COPD and prescribed medication. On June 1, 2000, plaintiff reported he was feeling better and denied chest pain or shortness of breath. Plaintiff was not treated for respiratory problems again until April 18, 2002, at which time plaintiff was prescribed medication. Plaintiff was not treated again until August of 2004. The record clearly shows plaintiff has been diagnosed with a respiratory problem; however, the medical evidence reveals plaintiff sought infrequent treatment for respiratory problems and when

-11-

he did seek treatment the medication successfully relieved his symptoms. *Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir.2007) (impairment is not severe if it is only slight abnormality that would not significantly limit mental ability to do basic work activities). Despite having a breathing impairment, the ALJ also noted plaintiff continued to smoke up to two packages of cigarettes a day at least through the date last insured. Further, when plaintiff did again seek medical treatment in August of 2004, plaintiff reported he was not taking any medication and actually had been doing well until a few months prior to admission.

With regard to an alleged mental impairment, there is no evidence that plaintiff was diagnosed with a mental impairment or that he sought treatment from a mental health professional during the relevant time period.

Regarding daily activities, up until plaintiff's alleged onset date, plaintiff testified he was a working supervisor for a company that vaccinated and de-beaked chickens for a chicken company. Plaintiff testified he supervised over a crew and took care of a geographical area that went from Pittsburgh to Texas. During the relevant time period plaintiff did not seek treatment for any impairments or limitations and did not report any limitations in his activities of daily living to any health care provider as would have been expected. Plaintiff did indicate a decreased ability to perform activities of daily living in May of 2004; however, this was well after his insured status had expired.

We believe the foregoing constitutes substantial evidence to support the ALJ's decision that plaintiff's alleged impairments did not significantly limit his ability to perform any "'basic work activity'" during the time period in question. *See Bowen*, 482 U.S. at 158.

## V. Conclusion:

Based on the foregoing, we recommend affirming the ALJ's decision, and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of February 2009.

/s/  *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)